[Civ. No. 5255. Third Appellate District.—December 7, 1934.]

THOMAS F. WALLER, Respondent, v. JOSEPHINE WALLER, Appellant.

H. E. Gleason for Appellant.

George H. Gobar for Respondent.

PLUMMER, J.—This action was brought by the plaintiff for the purpose of having set aside a certain deed executed by the South Coast Land Company to the plaintiff Thomas F. Waller and the defendant Josephine Waller, his wife, as joint tenants. The plaintiff had judgment, and from this judgment the defendant appeals.

The relief granted to the plaintiff appears to have been awarded on the theory that the deed was made in consideration of the appellant promising to return and live with the plaintiff as his wife, and that she failed to keep such promise. The deed in question was made in November, 1928. This action was begun in January, 1931. The appellant demurred to the plaintiff's complaint; raised, among other questions, that of laches; and also, that the complaint does not state facts sufficient to constitute a cause of action. Objection is also made that the findings are not supported by the evidence.

As a setting out of the testimony, which will hereafter be done, shows very clearly that the findings are not supported, we do not need to give any consideration to the insufficiency of the complaint, or the question of laches on the part of the plaintiff in allowing over two years to elapse after the execution of the deed before the institution of this action.

The complaint alleges, and the court found, that prior to the execution of the deed involved herein the plaintiff had a contract for purchasing certain lands lying in the county

of San Diego, giving a particular description thereof. Following the allegations of the complaint, the court made, among others, the following findings:

## "IV.

"It is true that following the marriage of the plaintiff, Thomas F. Waller, and the defendant, Josephine Waller, said defendant repeatedly begged, pleaded and requested that plaintiff transfer to her an interest in the above described real property, and that the defendant, Josephine Waller, on more than one occasion and on occasions too numerous to mention, stated to plaintiff, over a period of time from the marriage of plaintiff and defendant up to and including the 10th day of September, 1928, that she would like to have the real property of plaintiff stand in her name and that of plaintiff as joint tenants with the right of survivorship so it would go to her if he died. It is true that on or about November 16, 1928, Josephine Waller, having no intention to perform said promise, stated to plaintiff that she would return to live with plaintiff if he would have the deed to the real property which he was obtaining at the time, made out to her and him as joint tenants with the right of survivorship.

## "V.

"It is true that the defendant Josephine Waller, during the period of the time from July 14, 1928, up to and including the 10th day of September, 1928, professed to have great love and affection for plaintiff, who was a man of fifty years or thereabouts, and had been a bachelor prior to his marriage to her.

"It is true that plaintiff believing all of the above statements so made to him by the said defendant, Josephine Waller, and relying upon the said statements, and desiring to maintain the love and affection of said defendant, did, by a deed made and executed on the 16th day of November, 1928, have conveyed to the said defendant Josephine Waller, and himself as joint tenants with the right of survivorship, the said above described real property by defendant, South Coast Land Company, a corporation, from whom plaintiff was buying said property. It is true that the consideration for said deed to be paid to the said plaintiff by the said defendant Josephine Waller, was the carrying out of the promise to return to and live with plaintiff as his wife.

It is true that said plaintiff has never received either the whole or any part of the said consideration since the time he had conveyed the said above described real property to the said defendant Josephine Waller, and himself as joint tenants with the right of survivorship, and said defendant Josephine Waller, has continually refused, and failed to return to, and live with plaintiff as his wife at all times since the making of said deed.

"VI.

"It is true that the said defendant Josephine Waller, at the time and coincident with the making of the above statements to said plaintiff, knew the same to be false and fraudulent in this, that she, the said defendant, did not desire to have an interest in this said above described real property deeded to her and the said plaintiff so that it would go to her if he died, but the said defendant, Josephine Waller, desired the said real property to stand partly in her name for her personal use and benefit and to use said interest in said property as a basis for an advantageous property settlement in her contemplated divorce action against plaintiff.

"It is true that the attitude, love and affection of the said defendant, Josephine Waller, changed shortly after the transfer to her by the said plaintiff of the interest in said above described real property, and from the 16th day of November, 1928, the conduct of the defendant, Josephine Waller, has been unbearable in so far as the plaintiff was concerned, in this, that the said defendant, Josephine Waller, repeatedly after obtaining the recording of said deed to the said interest in the above described real property from said plaintiff on December 7, 1928, in Book No. 1571, page 22 of deeds, records of San Diego County, California, told said plaintiff that 'since the above described real property was partly her own property, that he could pay her $2000.00 for her interest therein at $25.00 a month, interest at 8 per cent per annum on balance due, and $150.00 to her attorney,' in exchange for a quitclaim deed for her interest therein.

"XI.

"It is true that the above described property and the whole thereof was purchased from plaintiff's separate funds earned and accumulated by plaintiff during the period when plaintiff and defendant were unmarried and living apart.

It is true that no part of the purchase price paid for said property and no investment made therein was from the separate property or funds of defendant Josephine Waller. It is true that said property was so acquired in the years prior to 1928, and deed to same was obtained in 1928, and the title to said property was then taken in the names of, and said property was then conveyed to plaintiff and defendant Josephine Waller as joint tenants with the right of survivorship upon, and because of the express promise of defendant Josephine Waller, who was then living separate and apart from plaintiff, to return to and live with plaintiff as his wife.

"It is true that said deed was ordered to be made to plaintiff and defendant Josephine Waller, as joint tenants with the right of survivorship also upon the suggestion of Elizabeth Keogh, a clerk in the office of defendant, South Coast Land Company, a corporation, grantor, made November 16, 1928, at the time plaintiff and defendant Josephine Waller, called to order said deed, at which time said Elizabeth Keogh stated to plaintiff, 'I suppose you want this deed made to yourself and wife as joint tenants,' to which query plaintiff, being an uneducated man and otherwise ignorant of the effect of the inclusion of his wife's name on said deed, stated 'Yes', and plaintiff thereafter executed a written order in words and figures as follows:

" 'November 16, 1928.

" 'For and in consideration of the sum of Ten Dollars ($10.00) in hand paid, receipt of which is hereby acknowledged and for other valuable consideration, I, the undersigned, Thomas F. Waller do hereby assign all my right, title and interest in and to the within contract and all the land herein described to Thomas F. and Josephine Waller, husband and wife, joint tenants, together with the 5 shares of capital stock of the Oceanside Mutual Water Company.

" ' (Signed)  T.  F.  WALLER

" '206½ N. *Boulom* Fullerton.'

" 'Witness (Signed) ELIZABETH KEOGH.

"Relying upon which order defendant South Coast Land Company, a corporation, executed the deed to said land as aforesaid. It is true that said deed was so ordered by plaintiff with no intent whatsoever on the part of the plaintiff to make a gift of said property or any part thereof to de-

fendant Josephine Waller, and in reliance upon defendant Josephine Waller's representation that she would keep her promise and would return to live with and be a wife to plaintiff. It is true that ever since the title was so 'conveyed, said property has been occupied by plaintiff up to November 1, 1930, as an avocado ranch and nursery, and that since said date, as the home of plaintiff alone, and that defendant, Josephine Waller, has never occupied said property in any manner, and said property was held and used as the separate property of plaintiff at all times and not otherwise.''

That these findings are not supported by the evidence, as contended for by the appellant, we here set forth in full the testimony of the plaintiff, which is all the testimony bearing on the subject, to wit:

"Thomas F. Waller, the plaintiff in the above entitled action, having been called as a witness in his own behalf, testified as follows: My name is Thomas F. Waller. I live at Carlsbad, San Diego County, on the ranch involved in this particular lawsuit. Q. I show you a deed from the South Coast Land Company to Thomas F. Waller and Josephine Waller, husband and wife, as joint tenants, with rights of survivorship. I will ask you if you have seen that before. A. I saw something like that. Mr. Gobar: I wish to offer this deed in evidence as plaintiff's exhibit. The Court: It may go in as Plaintiff's Exhibit I. The said deed thus received in evidence was executed by the South Coast Land Company conveying to Thomas F. Waller and Josephine Waller, husband and wife, as joint tenants, the real property described in plaintiff's complaint in this action, dated November 16, 1928. Before I got this deed I was buying a property on a contract from the South Coast Land Company. About the time I got this deed, I think it was right about $1,100.00 I still owed on the place. At the time I got the deed I was married to Mrs. Waller. She was not living with me then. I borrowed $1,100.00 from the Building and Loan Company at Anaheim, California, to pay off the balance due on the contract so that I could get this deed. When I wanted to borrow this money from the company they required my wife to sign the papers, so I went to see her in regard to signing them. I saw her at her home here in Hollywood and I just said I wanted to

borrow some money on the place to pay off my trust deed and some other debts and wanted her to sign the papers. She promised me that she would. I went and made arrangements to get the money and then went in after her to sign the papers. She wanted to back out and not go and sign them. I told her she ought not to do that way, tell me she was going to do something and then not do it and have me go to all that trouble. She said she would go down to see her lawyer and if it was all right for her to sign, she would sign them. She said her lawyer was Mr. Barnes, so we just got in the car and went on down to see Mr. Barnes and had a conversation with Mr. Barnes. Mr. Barnes said she could sign the papers, it would be all right for her to sign the papers if the papers were signed up like I said they were; something like that. I told her the deed was to be made in her name, too. She did not say anything about the deed being made out in her name. Q. Did she say she would do anything besides signing? A. Well, we just left there then I believe, if I remember right, and went on out and signed the papers, out to Anaheim. Q. You signed the papers at Anaheim. A. Yes. And then I think I brought her home. I do not remember that I had any conversation with her at this time. After I signed the note and trust deed I paid some money to the Land Company from whom I bought the land with the money that I borrowed. I had to sign to get the money before I could get the deed. I do not remember having had anything to say with regard to these papers or the property after I got the money on this loan. I got the loan for $2,200.00 and got $300.00 later. Both of them amounted to $2,500.00. She signed the papers on the second loan. Q. Now, was any conversation ever had between your wife and you after you had separated, about going back to live together again? A. Of course she promised this. Q. When was this? A. Just when we started to make it, to get the deed made out, and everything. Q. What did she say? A. Well, she just decided that she would go back and live with me. The Court: Is that what she said? A. Yes, sir, she said she was coming back and live with me, and I was going to have the deed made to I and her, and if she was going to be my wife, I wanted it to be hers, deed part of this to her; that's the way it was, if you want it. Q. This was at what time? A. Well, when we

started in to get this deed made out. Q. Did she ever say anything along that line any other time? A. No, no, that was the first time, I believe, we thought anything about getting any deed and paying it out, you see. Q. Did she actually return and live with you? A. No, sir. Cross examination: The first conversation I ever had with Mrs. Waller about going back to live with me was when the deed was made out and the loan papers signed. Before I had that conversation I went to see the loan people about getting a loan. I arranged for the loan and then went to see her. The Company told me if I got the loan, Mrs. Waller would have to sign the papers and I went back to see if she would sign the papers with me. That was the reason I went back to see her, about signing the papers. Q. Now, after the deed was made out did you have any discussion with her about going back and living with her prior to about six months afterward? A. Well, now, I cannot remember the dates, but she come out there and made the proposition about coming back and had me also hunt for a house and she would come back in three or four days; she said she would come back. Q. That was when she suggested coming back and living with you that the deed was made out? A. At one time, yes, sir. Q. That was about six months after the deed was made out, wasn't it? A. I could not tell you when it was. The loan of $2,200.00 which was afterwards raised to $2,500.00 never has been repaid. Mrs. Waller signed the note for $300.00 additional loan. I am pretty sure she did or I would not have got it. Redirect examination. The witness testified further: I remember the time when I signed that direction to make the deed. It was at the time I got the deed. We were at the South Coast Land Company down there. Mrs. Waller was there and some of the office force of the Land Company. I remember now, I had my first talk with the man and he asked me how I wanted it made out, and then he explained it to me and told me how. I could not say just exactly, tell it just exactly like he told me, but he explained that if I had it made in both names that at my death she would have no trouble in keeping the property and no one come in and take it away from her. She was there at the time, and I says: 'Well, she is my wife, we will just have it all made out and have no more trouble about it.' They made out

the deed that way and nothing more happened as near as I can remember of.''

There is nothing in this testimony showing that the appellant repeatedly begged, pleaded and requested that the plaintiff transfer to her an interest in the real property; nor does it appear from the testimony that the appellant, having no intention to perform, stated to the plaintiff that she would return to live with the plaintiff if he would deed the property to her. No conversation appears to have been had in relation to the deeding of the property until at the time of the execution of the deed and the execution of instruments to secure payment of the balance due on the property.

There is no evidence in the record in relation to the existence of any love or affection between the parties, or that there was any change in relation to that subject. There is no evidence in the testimony that the plaintiff relied upon or believed any statements alleged to have been made by the appellant in this action to induce him to have the deed made to her as one of the joint tenants; and there is no evidence to support the finding that the consideration for the deed was the carrying out of the promise on the part of the appellant to return and live with the plaintiff as his wife. The record shows that prior to the execution of the deed, the plaintiff had already made an assignment to the appellant of an interest in the contract, precisely the same as that contained in the deed of conveyance.

The record also shows the signing of promissory notes by the appellant. There is mention in the record that the plaintiff had executed some instrument to indemnify the appellant if she were called upon to pay any portion of the notes in question. The instrument, however, is not in the record.

We do not need to enter into any discussion of the legal principles involved, or review any of the cases cited by the appellant having to do with the cancellation of deeds obtained by fraudulent promises, as the testimony which we have set forth shows that the findings of the court are unsupported, as contended for by the appellant.

The judgment is reversed.

Pullen, P. J., and Thompson, J., concurred.